*19 SUHRHEINRICH, J, Circuit Judge.
Plaintiff Regina Watkins, as next friend and parent of Arckasier Watkins, appeals from the order of the district court granting summary judgment to Defendants Sad-ler Bailey, Bailey and Benfield, P.L.L.C., Jack Beam, and Beam and Raymond, P.L.L.C., Watkins’ former lawyers, in this legal malpractice action. The legal malpractice claim is premised on the alleged misdeeds of former counsel in an underlying medical malpractice action Watkins filed on behalf of her daughter. We agree with the district court that the doctrine of judicial estoppel bars this action. We therefore AFFIRM.
I. Background
In 2005, Regina Watkins, on behalf of Arckasier, sued the Methodist Health Care Hospital and the doctors that cared for Watkins during her pregnancy, claiming that their negligence resulted in serious injuries to Arckasier. One week before trial, the medical defendants offered a substantial settlement. Watkins declined the offer upon the advice of her attorneys. The case proceeded to trial before a jury. On the second day of trial, Sadler Bailey engaged in “contumacious conduct,” disparaging opposing counsel, the state trial court judge, and his own client. Bailey’s misbehavior occurred outside the presence of the jury. After a brief recess, the trial judge granted a mistrial based on the lawyer’s improper conduct during the trial. The trial judge subsequently held Bailey in criminal contempt.
After the mistrial order was entered, Defendants reopened settlement discussions with the medical defendants. Upon advice of counsel, Watkins agreed to accept a settlement offer that was roughly 3% less than the original one. Because the ultimate beneficiary of the suit was Arckasier, a minor, the state trial court (a different judge) held a hearing to ensure that the settlement was in Arckasier’s best interest. At the hearing, Watkins testified that she believed “it would be in the best interest of [her] child to accept this settlement.” She also stated that her attorney had “rendered valuable services to [her] as [her] lawyer and what he’s asking for is also in the best interest of [her] and [her] child.” Page ID 160-61. The guardian ad litem, charged under Tennessee law with assuring the court that “it is in the best interest of the minor to settle the claim in the approved amount,” Tenn.Code Ann. § 29 — 84—105(b)(5), approved the settlement as such. The guardian ad litem also verified that Watkins believed it was in the best interest of both herself and her child to settle the matter. The judge approved the settlement.
Watkins later filed this lawsuit against Sadler, Beam, and their law firms, asserting legal malpractice, breach of contract, and breach of fiduciary duty. Specifically, Watkins alleged that because of Bailey’s misconduct, she received less money in settlement of her original medical malpractice claim. She also claimed that Bailey settled the case to avoid being cited for criminal contempt, but did not reveal his underlying motive to her. Defendants argued that Watkins was judicially estopped from asserting legal malpractice, breach of contract, and breach of fiduciary duties against them based on the settlement in the underlying case. The district court granted summary judgment to Defendants, finding that “[t]he behavior in question took place before and continued until the settlement hearing,” PagelD 3113, and that Watkins “was aware of Bailey’s conduct before the trial court and of the contempt charges against him.” Id. The court concluded that the position Watkins was currently asserting was contrary to the position she asserted in the settlement *20 hearing, wherein she resolved all of her claims against Methodist Healthcare. Because Watkins had “stated facts under oath in a prior judicial proceeding that she now undertakes to contradict,” PagelD 8114, the district court concluded that judicial estoppel applied.
This appeal followed.
II. Analysis
“‘[Wjhere a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.’ ” New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895)). This rule, known as judicial estoppel, “generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.” Id. (internal quotation marks and citation omitted). The object of the doctrine is “to protect the integrity of the judicial process.” Edwards v. Aetna Life Ins., 690 F.2d 595, 598 (6th Cir.1982). Although the contours of this equitable doctrine are not precisely defined, the Court has identified several factors “which inform the decision whether to apply the doctrine in a particular case.” New Hampshire, 532 U.S. at 750, 121 S.Ct. 1808. First is whether a party’s later position is clearly inconsistent with its earlier position. The second is whether the party has successfully persuaded a court to accept that party’s earlier position, such that judicial acceptance in a later proceeding creates the perception that one of the two courts was misled. Third is whether an unfair advantage or detriment would result. Id. at 750-51, 121 S.Ct. 1808. The Court stressed that these factors were neither “inflexible prerequisites” or an “exhaustive formula,” and that “[additional considerations may inform the doctrines’ application in specific factual contexts.” Id. at 751, 121 S.Ct. 1808.[1] Each of these factors supports the district court’s application of the doctrine in this case.
A. Inconsistent Positions
Regina Watkins serves as the next friend for the minor, Arckasier Watkins, in the legal malpractice action (the present position), just as she did in the underlying state medical malpractice suit (the former position). The crux of the complaint in the current action is that:
—Prior to the state medical malpractice trial Watkins received a substantial settlement offer;
—During the trial Sadler Bailey engaged in contumacious conduct which caused the state court trial judge to declare a mistrial and charge him with criminal contempt;
—After the mistrial, but before the contempt hearing, the hospital defendants made a lower settlement offer;
—Sadler Bailey advised her to accept the lower settlement offer;
—Sadler Bailey did not tell her that he was attempting to settle the matter in order to avoid the contempt hearing;
*21 —Had she been given appropriate advice, Watkins would not have given her permission to settle on the terms and fees to which she agreed.
Watkins claims that Sadler Bailey caused a mistrial, and then acted under a conflict of interest in misleading her into settling the action to save his own skin. Were these the only facts, judicial estoppel might not apply. See, e.g., Mungo v. Taylor, 355 F.3d 969, 981-82 (7th Cir.2004) (holding that judicial estoppel was inapplicable in a legal malpractice case where the plaintiffs earlier testimony that she freely and voluntarily agreed to sign the settlement agreement based on her attorney’s advice was not clearly inconsistent with her current position that her attorney gave her bad legal advice and pressured her into accepting the agreement).
But the state court record in the medical malpractice action (the prior position) establishes that, prior to the settlement, Watkins also knew that:
—The state court trial judge had declared a mistrial;
—The judge was biased against her attorney and favored the hospital’s attorneys;
—The judge threw Bailey in jail;
—The defendants had offered a substantial sum to settle the case before trial.
In her deposition testimony in this case, Watkins explained why she brought the legal malpractice action.
Q: So you’re here because Mr. Bailey failed to, in your words, go over in detail what happened at the mistrial?
A: Yes.
PagelD 711. Yet, later in her deposition Watkins testified that:
Q: Yeah. After the court declared a mistrial and, you know, found Mr. Bailey in contempt, did you feel like Mr. Bailey couldn’t represent you at that point?
A: No. I didn’t feel that way.
Q: Okay.
A: Because I trusted him.
Q: Okay. Did he continue to talk with you after that?
A: Yes, sir.
Q: Okay. And you knew that a mistrial had occurred?
A: Yes, sir.
Q: You knew that he had actually been sent to jail; is that correct?
A: Yes, sir.
Q: And the Judge is the person that did that?
A: Yes, sir.
PagelD 731. In addition, Watkins testified that Beam and Raymond were still available to her to answer any questions about the settlement. Id.
Moreover, at the settlement hearing, Watkins was questioned by her attorney under oath. Watkins indicated that she had discussed with Bailey “in some detail” the terms of the proposed settlement agreement. PagelD 160. She acknowledged that she knew the settlement would require Methodist Hospital to a pay a lesser amount than the original settlement offer, plus court costs and the guardian ad litem’s services. (Id.).
Bailey and Watkins then engaged in the following colloquy:
Q: Okay. Now, you know that you don’t have to do this. We could go to trial again, and we could presumably get a Court that could let us go all the way to a jury, and you might do better and you might do worse, or you might do the same.
You understand that if you settle the case here, you’re giving up that right, and you’re taking basically the bird in *22 the hand, the money right now, and that would be the end of this?
A: Yes, sir.
Q: You can’t come back ever for more money for your child no matter what might happen in the future. You understand that?
A: Yes, sir.
Q: Okay. Now, knowing all of those things, do you think it would be in the best interest of your child to accept this settlement of ... dollars?
A: Yes, sir.

Id.

And, on cross-examination, Watkins was asked by the hospital’s attorney:
Q: ... [Y]ou’re completely satisfied in your mind as the mother of this child that you’re doing the right thing, and you believe that in your heart, don’t you?
A: Yes, sir.
Q: And you also believe that Mr. Bailey rendered valuable services to you as your lawyer and what he’s asking for is also in the best interest of you and your child?
A: Yes, sir.
PagelD 161.
The court then asked her:
THE COURT: Do you understand— Mr. Bailey has done a good job in telling you that — that this is the time that you’re going to ask this Court to approve this settlement, or you have the option, as well, to say, you know, I thought about this, I want to resume the trial or have a trial in this case. You have that option on behalf of your daughter. Do you understand that?
THE WITNESS: Yes, sir.

Id.

Another important figure — the guardian ad litem — attended the settlement hearing. As noted, the guardian ad litem is charged under Tennessee law with assuring the court that “it is in the best interest of the minor to settle the claim in the approved amount.” Tenn.Code Ann. § 29-34-105. The guardian ad litem, an attorney, was in the courtroom the morning of the mistrial[2] and must have witnessed Bailey’s behavior. The guardian ad litem therefore knew, or most certainly should have known, that the declaration of a mistrial had been precipitated by Bailey’s behavior on the second morning of trial.
At the settlement hearing, the guardian ad litem verified that Watkins believed it was in the best interest of both herself and her child to settle the matter. More importantly, the guardian ad litem by his signature “freely given,” agreed and approved of the settlement as “in the best interest of the minor.” PagelD 174. Presumably he did so after honoring his statutory “duty to the court to impartially investigate to determine the facts ... and his “duty to determine what is best for the [minor’s] welfare.” Tenn.Code Ann. § 34-l-107(d)(l). Thus, at the time, both Watkins herself and the guardian ad litem represented to the state court under oath that the settlement was in the best interest of Arckasier. Watkins, and most certainly the guardian, knew or were chargeable with full knowledge of the attendant facts. See McKay v. Owens, 130 Idaho 148, 937 P.2d 1222, 1229 (1997) (stating that “the concept of judicial estoppel takes into account not only what a party states under oath in open court, but also what that party knew, or should have known, at the time the original position was adopted”; *23 and that “the knowledge that the party possesses, or should have possessed, at the time the statement is made is determinative as to whether that person is ‘playing fast and loose’ with the court”).
Even if she did not know that Bailey’s unruly behavior was the reason for the mistrial, Watkins knew that a mistrial had occurred but that she could nonetheless have a new jury trial. Yet she still opted to avoid the risk of further litigation and to “take the bird in the hand.” In other words, at the settlement hearing, based on the information provided by her attorneys during attorney-client conversations that a mistrial had occurred, Watkins took the position under oath that settling the case at that point in time for somewhat less than the original settlement offer was in the best interests of her child. For Watkins to claim that her attorneys were negligent means that she now believes the medical malpractice damages are more than her settlement amount, which is clearly inconsistent with her earlier statement under oath that it was in the best interest of her child to settle for that amount. Furthermore, regardless of the basis of Watkins’ knowledge at the time of settlement, the guardian ad litem, who was equipped with all of the facts, still agreed the ultimate settlement was in the child’s best interest.
In short, Watkins’ position on behalf of Arckasier in the present legal malpractice action is “clearly inconsistent” with the position she took previously in the state court malpractice case.[3]
B. Actually Accepted
The second factor, judicial acceptance of the prior position, is also met. Under Tennessee law, Tennessee courts have a special responsibility to protect a minor’s interest. See Tenn.Code Ann. § 34-1-121(b); see also id. § 29-34-105(a); Wright ex rel. Wright v. Wright, 337 S.W.3d 166, 178-79 (Tenn.2011) (and cases cited therein). That is, before approving the settlement, the state court had to determine that it was in the best interests of the child, so it necessarily “accepted” Watkins’ position in the state court action. And because the state court judge “deem[ed] the compromise to be in the best interest of the minor” here, the order approving and confirming the settlement was “binding on [Arckasier].” See Tenn. Code Ann. § 34-1-121 (b). In other words, there was “judicial acceptance” of the prior inconsistent position. See Edwards, 690 F.2d at 599 n. 5 (stating that judicial acceptance does not require that a party actually prevail on the merits in the prior proceeding but simply that “the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition”); Reynolds v. C.I.R., 861 F.2d 469, 473 (6th Cir.1988) (same; citing Edwards).
C. Unfair Advantage
Third, Watkins would obtain an unfair advantage were the doctrine deemed not to apply. Allowing Watkins, on behalf of Arckasier, to- proceed with her legal malpractice claim allows Arckasier to potentially obtain another recovery against another party, arising out of the same transaction. See McKay, 937 P.2d at 1228 (holding that the plaintiff could not take advantage of settlement from one party — the medical malpractice defendant — and later repudiate the statement *24 made in open court to obtain recovery from her attorneys who were intimately intertwined with the prior proceeding).
D. Additional Considerations
Several “additional considerations” support the application of the equitable doctrine of judicial estoppel in this case. See New Hampshire, 582 U.S. at 751, 121 S.Ct. 1808. There is the hospital to think about: it entered into a confidential settlement agreement. If the current lawsuit proceeds to trial, the hospital essentially loses the benefit of that bargain, namely to avoid litigation. The hospital would also lose the bargained-for benefit of confidentiality. To prove the legal malpractice claim, the fact finder would have to be made aware of the facts of the underlying medical malpractice claim in order to assess liability and damages. This in turn conceivably could result in a lawsuit by the hospital against the trust. And of course, there is Arckasier. This lawsuit, like the malpractice claim, is her lawsuit. As Watkins’ current counsel acknowledged at oral argument, if this case were allowed to proceed, any and all expenses for this litigation would come out of Arckasier’s trust.
The raison d’etre of the doctrine is “to protect the integrity of the judicial process.” Edwards, 690 F.2d at 598. As at least one court has remarked: “The rationale underlying the theory of judicial es-toppel is the preservation of the sanctity of the oath and the elimination of prejudice in the administration of justice. One may not assert a particular position in order to serve one purpose, then assert a wholly contrary position to serve another.” McKay, 937 P.2d at 1227 (quoting Owen v. Knop, 853 S.W.2d 638, 643 (Tex.App.1993)). See also Decatur County Bank v. Duck, 969 S.W.2d 393, 397 (Tenn.App.1997) (stating that judicial estoppel applies “to one who has made oath to a state of facts in a former judicial proceeding which in a later proceeding he undertakes to contradict”; and is designed “to suppress fraud and prohibit deliberate shifting of position to suit the exigencies of each particular case that may arise concerning the subject matter in controversy”). Allowing Watkins’ the legal malpractice suit to proceed would undermine the state court’s order confirming that the settlement was in the best interests of Arckasier.
As to Plaintiffs remaining claims, we hold that Plaintiffs objection to the magistrate judge’s protective order is moot and her objection to the magistrate judge’s award of sanctions is not properly before us since the district court never ruled on Plaintiffs objection.
C. Conclusion
For these reasons, we hold that the doctrine was properly applied in this case. The judgment of the district court is AFFIRMED.

. The district court relied on Tennessee’s doctrine of judicial estoppel, noting that the Tennessee courts apply similar factors as those used under the federal doctrine. However, this court has held that, even in diversity actions like this one, federal law rather than state law governs application of the doctrine in the federal courts, even in. diversity suits like this one. Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 n. 4 (6th Cir.1982).

. Bailey’s antics occurred outside the presence of the jury. Although Bailey's behavior warranted some form of punishment, the declaration of a mistrial was unnecessary.

. Judicial estoppel would apply under state law because Watkins' statements were made under oath. See Decatur County Bank v. Duck, 969 S.W.2d 393, 397 (Tenn.App.1997) ("The law of judicial estoppel ordinarily applies to one who has made oath to a state of facts which in a later proceeding [s]he undertakes to contradict.")